UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEVEN J. STOCKWELL,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL ASTRUE, Commissioner of Social Security Administration,<br><br>  Defendant. | CASE NO.  **C07-5449BHS**<br><br>REPORT AND RECOMMENDATION<br><br>Noted for May 30, 2008 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administrative decision..

<u>INTRODUCTION</u>

Plaintiff, Steven J. Stockwell, was born in 1948.  He has a high school diploma and one year of college. (Tr. 245).  He testified that he last worked approximately June 15, 2004, as a meat cutter for Fred Meyer. (Tr. 246). He did that work for 27 years. (Tr. 246). He testified that up until his last year in that job, he would lift as much as 100 pounds, but in his last year, he limited himself to about 25 pounds. (Tr. 246). He worked only part-time for his last seven months. (Tr. 246). He testified that he stopped working because he couldn't stand or walk anymore. (Tr. 247).

Mr. Stockwell testified that he also worked as the owner/operator of a small restaurant from July 1993 through December 1996. (Tr. 247). On that job, he had to lift about 25 pounds and he worked 70 to 80 hours a week. (Tr. 247). He earned only about four hundred dollars per month. (Tr. 248). He stopped doing that work because it was not profitable and he could not keep up with the number of hours he had

REPORT AND RECOMMENDATION
Page - 1

1  to put in. (Tr. 248). He worked from June to November 1997 as a consultant at a deli. (Tr. 248). From
2  April 1998 to October 1998 he worked as a parts order clerk. (Tr. 248).

3  Mr. Stockwell testified that he has not looked for a job since June 2004 and is supporting himself
4  on a small monthly pension. (Tr. 249). He testified that he has been unable to work since June 2004 as a
5  result of the restrictions caused by his degenerative disc disease, including difficulty in standing and
6  sitting. (Tr. 250). He testified that since June 2004, he has only been able to lift 5 or 10 pounds possibly.
7  He has only been able to stand for about 10 to 15 minutes. (Tr. 250). He testified that he could only stand
8  for about three hours total in an eight hour day and could only sit for about four hours in an eight hour
9  day, and walk for maybe an hour and a half or two hours in an eight hour day. (Tr. 251).

10  Plaintiff filed an application for Social Security disability benefits on December 29, 2003, alleging
11  that he has been disabled under the Social Security Act since December 9, 2003. (Tr. 64-99).  His
12  application was denied initially and on reconsideration. (Tr. 57-61, 50-54). Mr. Stockwell filed a hearing
13  request and a hearing was held on September 14, 2006. (Tr. 241-80). On February 22, 2007 the ALJ
14  issued a decision in which she found that Mr. Stockwell was not disabled. (Tr. 20-32).   The ALJ
15  concluded Plaintiff retained the ability to perform semi-skilled work (Tr. 31).  Mr. Stockwell requested
16  review by the Appeals Council which, on August 18, 2007, denied his request for review, leaving the
17  decision of the ALJ as the final decision of the Commissioner. (Tr. 5-6).

18  Plaintiff filed the instant Complaint with the Court on August 24, 2007,  challenging the denial of
19  his applications for social security benefits.  Specifically, Plaintiff contends: (1) the ALJ failed to give
20  appropriate weight to the opinion of Plaintiff's treating and examining physicians; (2) the ALJ failed to
21  properly consider Plaintiff's testimony regarding his symptoms and limitations; (3) the ALJ improperly
22  determined Plaintiff's residual functional capacity; (4) the ALJ erroneously found that Plaintiff can
23  perform his past relevant work; (5) the ALJ failed to meet the burden of showing that Plaintiff can
24  perform any work in the national economy; (6) the matter should be remanded for an award of benefits,
25  and (7) if the matter is remanded for further consideration, a different ALJ should be assigned to review
26  the matter.

27  After reviewing the record, the undersigned finds the ALJ properly considered the two primary or
28  threshold issues – the ALJ's review of the medical opinion evidence and plaintiff's credibility.

REPORT AND RECOMMENDATION
Page - 2

Accordingly, the ALJ's decision is properly supported by substantial evidence and free of legal error.

DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

### A. THE ALJ PROPERLY CONSIDERED PLAINTIFF'S CREDIBILITY

Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints. Bunnell requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). When a claimant produces evidence of an underlying impairment that could reasonably produce pain or other symptoms, the ALJ can only reject claimant's testimony about the severity of his or her symptoms with "specific findings stating clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281-82, 1284 (9th Cir. 1996).

An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). However, as further explained in Fair v. Bowen, *supra*, and Smolen v. Chater, *supra*, at 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically.

Here, Plaintiff argues the ALJ's reasons for discrediting Plaintiff's allegations do not meet the

1  "clear and convincing" standard. The undersigned disagrees. The ALJ assessed Plaintiff's residual

2  functional capacity, and in doing so, she properly addressed the issue of Plaintiff's allegations suggesting

3  total disability, i.e., allegations that Plaintiff is unable to not only return to his past work as a meat cutter,

4  but also his inability to do any gainful work whatsoever. The ALJ explained her finding in detail, writing

5  the following:

> It is clear that the claimant has underlying medical conditions that could reasonably result in the symptoms he alleges if he failed to follow his medical regimen or attempted to exceed his residual functional capacity as set forth above. However, the claimant's allegations as to the intensity, persistence and limiting effects of his symptoms are disproportionate and not supported by the objective medical findings or by any other corroborating evidence. Although the claimant has received treatment for his allegedly disabling symptoms, which would normally weigh somewhat in his favor, the record reveals that the treatment has been essentially routine and conservative in nature, and has been generally successful in controlling those symptoms.
>
> Moreover, while the claimant was reasonably articulate and appeared to be cognitively intact, he was a poor historian, and hesitated for long periods before answering a question and required prompting for details. His responses while testifying were evasive or vague at times. In particular he was inconsistent in describing how much sitting, standing and walking he could do. Even if his replies were taken at face value, they still add up to at least eight hours per day. Furthermore, when the undersigned asked, he admitted that he could still manage work as a delicatessen consultant; yet later, when asked by his representative, he stated that he could not do the job full time, but was unable to clearly explain to the undersigned why this was so. The inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.
>
> In addition, although the claimant has described daily activities which are fairly limited, three factors weigh against considering these allegations as strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively week medical evidence and other factors discussed in this decision. Finally, the claimant has engaged in daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He testified at the hearing that he performs personal care without help, washes dishes, does laundry and dusting, sweeps the steps, shops for groceries twice a month, walks three times a week, works out on exercise machines and with weights, visits with friends two to three times a week, travels overnight to the coast, and uses a computer to check e-mail twice a week. He also said that he manages his personal finances, reads a newspaper and does crossword and Sudoku puzzles, and engages in social activities such as watching movies, playing cards and fishing. In addition, as mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity did not necessarily constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than he is unable to do any sort of maintenance work on his home (Exhibits 3E: 20, 5E: 38-39, and 6E: 43), yet the record shows at least on one occasion during that period the claimant presented for treatment, and complained of pain after doing gardening and lifting furniture (Exhibit 4F:57). Overall, the claimant's daily activities have been extensive and are not indicative of total disability.
>
> Considering the entire case record, the claimant fails to convince the undersigned that he is

|   |   |
|---|---|
| 1 | so impaired that he cannot perform any kind of gainful work.  Consequently, his subjective complaints are not found sufficiently credible to serve as additional evidence to support a finding of disability. |
| 2 |   |

3 (Tr. 27-28).

4 The ALJ reasons - lack of medical evidence to support total disability, inconsistencies in Plaintiff's testimony and his demeanor at the hearing, and Plaintiff's daily activities – are clear and convincing.  Moreover, the reasons stated by the ALJ are supported by substantial evidence in the record.  As further explained below, Dr. Kemple's records were reasonably interpreted by the ALJ to find Plaintiff was able to perform certain types of work that did not exacerbate his medical condition or symptoms.  At the hearing, Plaintiff testified that he gets "the relief that I need by sitting in different positions and moving or walking, sitting on the edge of a chair and kind of bending and stretching."  (Tr. 259) Plaintiff also stated he regularly exercised, including 30 minutes on an elliptical machine (Tr. 262), and he would "unwillingly" be able to do the work he did as a consultant for a deli (Tr. 268).   The ALJ properly discounted Plaintiff's allegations of total disability.

## B. THE ALJ PROPERLY ASSESSED THE MEDICAL EVIDENCE

The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, Plaintiff contends the ALJ improperly evaluated the opinions and records  provided by Dr. Kemple.  After reviewing the record and the ALJ's decision, the undersigned concludes the ALJ

reasonably interpreted the medical evidence, which is inconsistent. The ALJ, who is charged with reviewing the record as a whole in the context of the social security definitions and process of determining disability, concluded Mr. Stockwell retained the ability to perform, not only his past relevant work as a order clerk, deli manager or restaurant owner, but also less demanding jobs, such as an office clerk or information clerk. Substantial medical evidence supports the ALJ's residual functional capacity assessment consistent with these vocations.

The ALJ wrote a detailed analysis of the medical opinion evidence, specifically the opinion and records provided by Dr. Kemple. She wrote:

> As for the opinion evidence, there is a statement in an unsigned clinical note dated February 3, 2004 – presumably from Rick Jackson, M.D., the claimant's primary care physician at Ashbrook medical clinic – to the effect that the claimant should avoid working in hazardous conditions because of his use of pain medication. This treating source encouraged the claimant to "pursue the disability process", but expressed no further opinion concerning his residual functional capacity (Exhibit 3F:43). It is unclear if the doctor intended to state that the claimant was disabled. Furthermore, it is not clear that the doctor was familiar with the definition of disability contained in the Social Security Act and regulation. Specifically, it is possible that the doctor was referring solely to an inability to perform the claimant's past work as a meat cutter, which is consistent with the conclusions reached in this decision.
>
> Kip L. Kemple, M.D., the claimant's treating rheumatologist, opined on August 12, 2004, that the claimant would be unable to return to work as a meat cutter (Exhibit 4F:66). On September 21, 2004, Dr. Kemple wrote in his notes that the claimant was unable to return to his past work, but suggested that the claimant might benefit from vocational rehabilitation or "independent work" (Exhibit 4F:68). On November 2, 2004, he opined the claimant would be unable to return to work as a meat cutter, but recommended a physical capacity evaluation, and noted that he had discussed general job options for the claimant with Mike Bentemeyer (Exhibit 4F:70). Dr. Kemple wrote in a letter to claimant's representative that he was "comfortable" with the fact that the claimant was applying for disability benefits, but opined that he did not know if the claimant "could work in some capacity" (Exhibit 4F: 85). During this entire period Dr. Kemple continued to observe that the claimant was managing his symptoms well on a regimen of pain medication, exercise and stretching. The only additional treatments he prescribed were a six week course of physical therapy (Exhibit 4F: 56), and an epidural steroid injection (Exhibit 4F: 64) in July 2004. Again, on February 24, 2006, he observed the claimant was managing his symptoms with medications (Exhibit 5F: 90), and continued the regimen after examining the claimant on June 14, 2006 (Exhibit 5F: 88, 89). Dr. Kemple's observations and opinions expressed during this period are consistent with the clinical record and accurately describe the functional impact of the medically determinable impairments upon the claimant.
>
> Curiously, however, on September 20, 2006, Dr. Kemple wrote to the claimant's representative that the claimant's pain was partially controlled with medications, but that the claimant experienced frequent, unpredictable flare-ups with physical activity. He opined the claimant could sit for 30 to 60 minutes at a time, but that his ability to stand, walk and bend was "limited". Dr. Kemple stated the claimant's capacity for work was "prominently limited", and further opined it was "unrealistic" for the claimant to "be

> involved in any available vocational activity on more than a very limited and unpredictable schedule" (Exhibit 6F:96).  The fact that Dr. Kemple used the term "*available* [emphasis added] vocational activity" strongly suggests to the undersigned that he was again referring solely to the claimant's inability to perform work as a meat cutter, which is consistent with his clinical notes and other substantial evidence in the case record.  On the other hand, if Dr. Kemple actually meant to say that the claimant was precluded from virtually all competitive work, his opinion cannot be given controlling weight because it is not well supported by medically acceptable clinical and laboratory diagnostic studies and is inconsistent with the other substantial evidence in the case record, including the doctor's treatment records (Social Security Ruling 96-2p).  There are no indications in his clinical notes of any significant number of symptom flare-ups, and he failed to provide objective evidence to substantiate his opinion or even explain how the claimant's impairments have limited his ability to stand and walk, or to fulfill the basic mental demands of competitive, remunerative work.
>
> There are two other reasons Dr. Kemple's opinion cannot be afforded significant weight.  First, while he does have a legitimate treating relationship with the claimant, the medical issues involved do not fall within the realm of rheumatology, and are better suited to be addressed by a qualified orthopedic specialist.  Second, it appears that Dr. Kemple may have in this case stepped out of his role as an objective treating medical source and assumed the role of advocate.  The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another.  Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid tension.  While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.
>
> There is also a physical capacity evaluation in the record performed by Scott Christensen, P.T., on either December 4, 2004 or January 26, 2005 [Exhibits 3F 34 and Exhibit 5F: 87-88].  Mr. Christensen determined the claimant could lift and carry thirty-five pounds occasionally and twenty pounds frequently.  During an eight-hour day, he concluded the claimant could sit for fifteen minutes at a time and for two to four hours and stand or walk for fifteen minutes at a time and for up to two hours.  He further concluded the claimant could sit, stand and walk for a total of four hours each provided he is allowed to periodically alternate sitting and standing to relieve pain or discomfort.  Finally, he concluded the claimant was limited to only occasional crouching and use of ladders, ropes or scaffolds, and could rarely twist or stoop.  Mr. Christensen indicated that the claimant could do light to medium work for an eight-hour work day, when allowed to change position every fifteen to thirty minutes (Exhibit 4F:33).  It is likely that Dr. Kemple had seen this evaluation when he opined in January 26, 2005, that the claimant could perform modified light-level work (Exhibit 4F:74).

(Tr. 29-30)

A review of the medical record supports the ALJ's analysis.  For example, there was no indication in Dr. Kemple's clinical notes of any significant number of flareups, and he failed to provide objective evidence to substantiate his opinion, or even explain how Plaintiff's impairments have limited his ability to stand and walk. (Tr. 177-224).  Dr. Kemple's notes document only one flare-up of pain following "some gardening and lifting of furniture"  (Tr. 206).  Further, although Dr Kemple noted x-rays and bone

scans that confirmed moderately advanced degenerative spondylosis, he had also considered these findings when he opined Plaintiff's pain was manageable with good relief from medications and his activity level was fair (Tr. 191). Finally, Dr. Kemple opined that Plaintiff could be released to light level work, with some modifications (Tr. 187, 189). Dr. Kemple did not explain the limitations he found in September 2006, and there had been no new studies since the x-ray and bone scans he considered when Dr. Kemple opined Plaintiff was capable of performing light work.

Plaintiff argues for a more favorable interpretation of Dr. Kemple's records and opinion, as well as a more favorable interpretation of the physical capacities evaluation prepared by Scott Christensen, the physical therapist. However, as noted above the ALJ's interpretation is reasonable and properly supported. "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

## CONCLUSION

Based on the foregoing discussion, the Court should affirm administrative decision. After reviewing the record, the undersigned finds no error in the two threshold issues. First, the ALJ properly discounted Plaintiff's testimony regarding the severity of his impairments, and second, the ALJ properly assessed the medical evidence. Accordingly, the undersigned also finds no error in the ALJ evaluation of Plaintiff's residual functional capacity, Plaintiff's ability to perform past relevant work or other certain types of work. Plaintiff's arguments that the ALJ erred in those findings is erroneously premised on the arguments that the ALJ failed to properly review the medical evidence and/or Plaintiff's credibility.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 30, 2008**, as noted in the caption.

DATED this 5th day of May, 2008.

                              */s/ J. Kelley Arnold*
                              J. Kelley Arnold
                              U.S. Magistrate Judge